SHIRLEY LONDON, Plaintiff-Appellee, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellants.

First District (4th Division)   No. 87—2098

Opinion filed December 1, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and William H. London, Assistant Attorney General, of Chicago, of counsel), for appellants.

No brief filed for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Shirley London, filed a *pro se* complaint for administrative review (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*) seeking to reverse a decision by the Board of Review of the Department of Employment Security (hereinafter board) that she was ineligible to receive unemployment benefits because she engaged in misconduct connected with her work, namely, tardiness. (Ill. Rev. Stat. 1985, ch. 48, par. 432(A).) The circuit court of Cook County reversed the board's decision and the board has appealed, contending that it properly determined that plaintiff was disqualified from receiving unemployment benefits due to misconduct. Plaintiff has failed to file a brief, and we therefore consider this appeal pursuant to the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 131-33, 345 N.E.2d 493. We hold that plaintiff's tardiness by several minutes due to road construction on the Dan Ryan Expressway on the day she was discharged did not disqualify her from receiving unemployment benefits, and we therefore affirm the judgment of the circuit court.

Plaintiff was employed as a computer operator by the Sewing Machine Exchange in Schiller Park, Illinois, from January 1979 until April 16, 1986, the day she was discharged. Although most of plaintiff's co-workers reported to work on or before 8 a.m., the employer gave plaintiff special permission to report to work at a later hour because her family had only one car and she needed to transport her husband to work in Indiana and her daughter to school before she drove to work each morning. According to the employer, plaintiff's permission to arrive late was withdrawn on May 28, 1985, after a comptroller complained that the company could not function properly unless plaintiff was punctual. The record on appeal contains a written warning to plaintiff dated May 28, 1985, which provided that continued tardiness would result in suspension after three transgressions and, eventually, dismissal. On February 27, 1986, plaintiff was told orally that she had until March 31, 1986, to try to make the necessary travel and transportation arrangements to insure her arrival at 8 a.m. The employer stressed that the company needed her to be present at 8 a.m. because the business was dependent upon her critical position as a computer operator. Plaintiff then made efforts to improve her punctuality and arrived at work between 8:20 and 8:30 a.m. During the administrative hearing, the employer admitted that he never specifically told plaintiff that her permission to arrive late had been rescinded. However, when several successive comptrollers complained that plaintiff's tardiness was "screwing up the opera-

tions," the employer circulated a memorandum stating that the employees were required to report to work by 8 a.m.

On April 10, 1986, plaintiff telephoned the employer and stated that she needed to attend to a personal matter and that she should be in at noon. She telephoned several more times and finally indicated that she would be unable to report to work that day. During the administrative hearing, plaintiff testified that "someone" was in jail and that she needed to attend to that matter.

When plaintiff returned to work on April 11, she was suspended for three days. The written memorandum concerning her suspension disclosed that she was suspended because (1) she was absent during a critical time of the month without prior notice, (2) she was not punctual, (3) she had excessive personal telephone calls, and (4) she conducted a jewelry business during her working hours which interfered with the performance of her duties. The memorandum warned that she would be suspended again or discharged without further notice if the problems were not remedied.

On April 15, the employer decided to discharge plaintiff on April 16 if she arrived after 8 a.m. When plaintiff reported to work no later than 8:06 a.m. on April 16, she was immediately discharged. During the administrative hearing, plaintiff testified that she had left home early enough to report to work by 8 a.m., but that she was delayed by the traffic and road construction on the Dan Ryan Expressway before exiting the expressway at 67th Street. When asked to state the cause of plaintiff's discharge, the employer responded, "Her continuous tardiness and not being on time when we had done everything in the world to try and get her to start coming in on time."

The board adopted and affirmed the referee's decision. The board found that plaintiff was discharged for being tardy after a warning and a suspension for tardiness, and that, although she formerly had been on a flexible time schedule, she was advised prior to her discharge that she would be required to be at work at a specific time. The board concluded that plaintiff had willfully disregarded her employer's interests, that her final transgression was without good cause and without notification to the employer, and that this constituted disqualifying misconduct. Plaintiff then sought judicial review.

In reversing the board's decision, the circuit court found that there was no willful failure to abide by the employer's rules because plaintiff had made every effort to notify the employer of the emergency on April 10. The board has appealed. We agree with the result

reached by the circuit court but for different reasons. See *Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 286, 527 N.E.2d 303.

■ In an unemployment insurance case, the board is the trier of fact and its factual findings are treated as *prima facie* true and correct. (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 510, 513, 475 N.E.2d 879; *Barron v. Ward* (1987), 165 Ill. App. 3d 653, 659, 517 N.E.2d 591; *Pesce v. Board of Review* (1987), 161 Ill. App. 3d 879, 881, 515 N.E.2d 849; *Zbiegien v. Department of Labor* (1987), 156 Ill. App. 3d 395, 399, 510 N.E.2d 422; *Gee v. Board of Review* (1985), 136 Ill. App. 3d 889, 895, 483 N.E.2d 1025; Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) Our function with respect to the board's factual findings is to determine whether they were against the manifest weight of the evidence. (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 513, 475 N.E.2d 879; *Kelley v. Department of Labor* (1987), 160 Ill. App. 3d 958, 961-62, 513 N.E.2d 988.) However, the same deference is not accorded with respect to legal questions such as the erroneous construction of a statute. *Northern Trust Co. v. Bernardi* (1987), 115 Ill. 2d 354, 365, 504 N.E.2d 89; *Barron v. Ward* (1987), 165 Ill. App. 3d 653, 659, 517 N.E.2d 591; *Pesce v. Board of Review* (1987), 161 Ill. App. 3d 879, 881, 515 N.E.2d 849; *Zbiegien v. Department of Labor* (1987), 156 Ill. App. 3d 395, 399, 510 N.E.2d 422; *Flex v. Department of Labor* (1984), 125 Ill. App. 3d 1021, 1023, 466 N.E.2d 1050.

In the case at bar, the board found that plaintiff was discharged for tardiness after a warning and a suspension. This factual finding did not contravene the manifest weight of the evidence because the employer specifically testified that tardiness was the reason plaintiff was discharged. However, the board then made a legal conclusion that plaintiff's tardy arrival on April 16 disqualified her from receiving unemployment insurance benefits. Therefore, we must determine whether plaintiff's tardy arrival on April 16, 1986, constituted misconduct connected with her work, which would disqualify her for unemployment benefits.

■ Section 602(A) of the Unemployment Insurance Act (Ill. Rev. Stat. 1985, ch. 48, par. 432(A)) provides that "[a]n individual shall be ineligible for benefits for the week in which he has been discharged for misconduct connected with his work." Misconduct is

> " 'conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of

such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.' " (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 511-12, 475 N.E.2d 879, quoting *Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 259-60, 296 N.W. 636, 640.)

(See also *Pesce v. Board of Review* (1987), 161 Ill. App. 3d 879, 882, 515 N.E.2d 849.) Disqualifying misconduct does not include "mere insufficiency, ordinary negligence or good faith errors in judgment" (*Winklmeier v. Board of Review* (1983), 115 Ill. App. 3d 154, 156, 450 N.E.2d 353), nor is it limited to conduct which is harmful or potentially harmful to the employer (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 511-12, 475 N.E.2d 879). Even though an employee's conduct may justify his discharge, it does not necessarily disqualify him from receiving unemployment benefits. (*Pesce v. Board of Review* (1987), 161 Ill. App. 3d 879, 882, 515 N.E.2d 849; *Carroll v. Board of Review* (1985), 132 Ill. App. 3d 686, 690, 477 N.E.2d 800.) The facts and circumstances of the particular case must be examined to determine whether or not an employee's behavior constituted misconduct. *Winklmeier v. Board of Review* (1983), 115 Ill. App. 3d 154, 156, 450 N.E.2d 353.

■ In *Wright v. Department of Labor* (1988), 166 Ill. App. 3d 438, 519 N.E.2d 1054, a garage cashier for a hospital was discharged for excessive tardiness after she reported to work five minutes late because her car had failed and she was required to take a bus instead. We observed that, under those circumstances, she was excused from notifying the employer that she would be late because her tardiness on the day she was discharged was unavoidable and for good cause rather than a deliberate act of misconduct. The record in *Wright* failed to disclose the circumstances surrounding her prior transgressions.

Similarly, in the instant case, plaintiff reported to work no more than six minutes late on the morning she was discharged. Her tardiness was attributable to road repairs and traffic congestion on an expressway notorious for such problems and was therefore for all practical purposes unavoidable. Under these circumstances, she was excused from providing advance notice of her tardiness on April 16. Although she had a history of tardiness, we note that the employer's accommodation of her work schedule, coupled with a succession of different comptrollers at the company, created some confusion as to whether plaintiff was required to report to work by 8 a.m. Further-

more, the employer acknowledged plaintiff's continual improvement in her punctuality. Finally, she was late to work on prior occasions because her family had only one car and she needed to transport her husband to work in Indiana and her daughter to school before she drove herself to her place of employment in Schiller Park. In our view, the circumstances surrounding her prior transgressions did not evince a willful and wanton disregard for her duties or for her employer's interests.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JOHNSON and McMORROW, JJ., concur.