EARL RAY, Plaintiff-Appellee, v. THE DEPARTMENT OF EMPLOY-
MENT SECURITY BOARD OF REVIEW *et al.*, Defendants-Appellants
(Chicago Etching, Defendant).

First District (2nd Division)   No. 1—91—1580

Opinion filed March 23, 1993.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan,
Solicitor General, and Claudia E. Sainsot, Assistant Attorney General, of
Chicago, of counsel), for appellants.

Legal Assistance Foundation of Chicago, of Chicago (Timothy Huizenga
and Tammy J. Lenzy, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:
Plaintiff Earl Ray filed a complaint to obtain administrative re-
view of a decision of the Board of Review of the Department of Em-
ployment Security (board) that he was ineligible to receive unemploy-
ment benefits because he was discharged for misconduct, *i.e.*,
misappropriating his employer's property. The circuit court of Cook

County found that the board erred and reversed. The board appeals from that decision.

Plaintiff was employed in the maintenance department of Chicago Etching from November 1986 until he was terminated on August 18, 1989. His application for unemployment benefits was allowed by the claims adjudicator. Chicago Etching then appealed and a hearing was conducted before a hearing referee on November 13, 1989.

At the hearing, Don Adams testified that he was a Wells Fargo employee working in an undercover capacity at Chicago Etching from June 12, 1989 to August 4, 1989. According to Adams, he posed as a trainee under plaintiff and observed plaintiff taking property from Chicago Etching on eight occasions, specifically June 20, 22, 23 and 27 and July 10, 13, 26 and 27, 1989. Adams testified that plaintiff picked up items in the maintenance department after his supervisor left. When asked what he observed plaintiff taking on these occasions, Adams responded:

> "I have listed here screws, nuts and bolts. Spray paint uh, there was one can of uh, material that was used to stop pipes from sweating. He picked that up. There was also a report of a battery from a car, which Mr. Ray told me that he had picked himself."

Adams added that plaintiff would place the items in his locker before the employees changed their clothes. Plaintiff would subsequently remove the items from his locker and walk out carrying them.

Adams testified that nuts and bolts were taken on June 20, 22 and 27, 1989. He further testified that the first time plaintiff took items from his employer in Adams' presence, he told Adams to take anything that he wanted.

Laura Jeziorski, an employee of Wells Fargo, testified that she supervised Adams in his undercover investigation at Chicago Etching and that he reported to her over the telephone almost every day. Further, she reviewed his written reports. Jeziorski testified that Wells Fargo policy directed its investigator to refrain from questioning the actions of employees during the course of an investigation. Further, Wells Fargo requests that the employer refrain from intervening during the course of an investigation.

Bert Johanson, personnel manager for Chicago Etching, testified that no criminal or civil charges were filed against plaintiff.

Plaintiff testified that he never stole anything from his employer and that he was unaware of any theft or pilfering problems at Chicago Etching. In addition, plaintiff stated that he did not recall any memorandum or bulletin from the company concerning pilfering.

Plaintiff first learned that he was accused of theft when he was discharged. Plaintiff admitted that he borrowed a battery when his car would not start, but he asserted that his boss told him to take it and keep it until he bought a new battery. Plaintiff further testified that a different supervisor told him to take a gallon of floor soap.

The referee found that plaintiff was ineligible for benefits because plaintiff was discharged for misconduct. He found that the employer was experiencing a series of thefts and that Adams witnessed defendant committing eight separate acts of theft and further found that Adams described plaintiff's actions in removing the property and the specific property removed on each occasion. The referee concluded that plaintiff misappropriated his employer's property in violation of a reasonable rule or policy of his employer. The referee's decision was affirmed by the board.

The circuit court reversed the determination of the board. Specifically, the court found that the employer failed to demonstrate that it had a policy against lending and the evidence further failed to establish that the employer was harmed.

The duty of the reviewing court on administrative review is to determine whether the findings and decision of the agency are against the manifest weight of the evidence. (*Sheff v. Board of Review* (1984), 128 Ill. App. 3d 347, 470 N.E.2d 1044.) Further, factual findings and conclusions are held to be *prima facie* true and correct. (Ill. Rev. Stat. 1989, ch. 110, par. 3—110 (now 735 ILCS 5/3—110 (West 1992)).) However, "the same deference is not accorded with respect to legal questions such as the erroneous construction of a statute." *London v. Department of Employment Security* (1988), 177 Ill. App. 3d 276, 279, 532 N.E.2d 294.

Thus, we must determine if the evidence justified the circuit court's reversal of the board's determination that plaintiff was discharged for misconduct.

■ In the instant case, the board found that plaintiff was ineligible for unemployment compensation based upon the finding that he was discharged for misconduct. Section 602(A) of the Unemployment Insurance Act (Act) defines misconduct as:

> "the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." (Ill. Rev. Stat. 1989, ch. 48, par. 432(A) (now 820 ILCS 405/602(A) (West 1992)).)

Further, the Act is to be liberally interpreted in order to protect individuals from severe economic insecurity arising from involuntary unemployment. *Lipman v. Board of Review of the Department of Labor* (1984), 123 Ill. App. 3d 176, 462 N.E.2d 798.

■ The statute requires that the disqualifying misconduct be in violation of a reasonable rule or policy of the employer. Further, there is no mandate in section 602(A) that such misconduct be in violation of a written rule. While there was no direct evidence that the company had an express policy prohibiting employees from taking company property for permanent personal use without permission, we find that any employer would obviously have such a policy unless a contrary policy is clearly presented. (See *Meeks v. Department of Employment Security* (1990), 208 Ill. App. 3d 579, 567 N.E.2d 481.) Implicit in the employment relationship is the understanding that employees do not steal from employers. Plaintiff's claim that his employer had no policy against taking items without permission is further belied by plaintiff's testimony that he could take items with permission and the fact that the employer had hired a Wells Fargo investigator, who reported that items were taken by plaintiff. In addition, plaintiff's actions in taking the items after his supervisor left the department, placing them in his locker until the end of the work day and then taking them with him reveal that plaintiff's actions in taking his employer's property were deliberate and further support plaintiff's knowledge of a policy against taking company property for personal use.

It must also be established that the employer was harmed by plaintiff's conduct. Plaintiff's actions in taking these items and in telling Adams that he could take anything he wanted clearly affect the employer's inventory of materials and costs. Thus, the determination of the circuit court was manifestly erroneous.

Based upon the preceding, the judgment of the circuit court is reversed.

Reversed.

McCORMICK, P.J., and SCARIANO, J., concur.