628 N.E.2d 986 (1993)
257 Ill. App.3d 354
195 Ill.Dec. 522
Julio ZUAZNABAR, Plaintiff-Appellant,
v.
BOARD OF REVIEW OF the DEPARTMENT OF EMPLOYMENT SECURITY and Greyhound Through R.E. Harrington, Inc., Defendants-Appellees.
No. 1-92-2120.
Appellate Court of Illinois, First District, Third Division.
December 29, 1993.
*987 Thomas W. Studwell, Martin R. Castro, Chicago Volunteer Legal Services, Chicago, for plaintiff-appellant.
Roland W. Burris, Atty. Gen., Chicago (Rosalyn B. Kaplan, Sol. Gen., Kimberly W. White, Asst. Atty. Gen., of counsel), for defendants-appellees.
Justice GREIMAN delivered the opinion of the court:
Plaintiff, Julio Zuaznabar, seeks to reverse the trial court's order affirming the decision of the Board of Review of the Illinois Department of Employment Security (Board) denying him unemployment benefits on grounds of misconduct as authorized by section 602(A) of the Unemployment Insurance Act (Act). Ill.Rev.Stat.1987, ch. 48, par. 432.
We reverse the trial court.
Plaintiff was employed as a bus driver for defendant, Greyhound Bus Lines (Greyhound), from March 10, 1990 until his discharge on February 18, 1991. The incidents leading to the discharge occurred on February 15, 1991 when plaintiff was driving a Greyhound coach from Chicago to Indianapolis, being covertly followed by a regional manager and a driver manager for Greyhound charged with reporting plaintiff's movements to his immediate supervisor. The managers observed plaintiff making two unauthorized stops approximately 40 minutes apart which were not reported to the central office as required by company policy. Plaintiff testified that these stops were occasioned by illness which required him to use a rest room at each stop. At one of these stops plaintiff allowed a passenger to cash a check which was also contrary to company policy. It was further alleged that plaintiff was driving too fast for the icy conditions of the roadway and following other motor vehicles too closely.
Plaintiff applied for unemployment benefits on February 20, 1991. Greyhound filed a protest against plaintiff's claim, asserting that he was ineligible for such benefits having been discharged for "misconduct," defined in section 602(A) of the Act as:
"[T]he deliberate and wilful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other *988 explicit instruction from the employing unit." (Ill.Rev.Stat.1987, ch. 48, par. 432.)
The claims adjudicator, however, found plaintiff eligible for benefits, determining that Greyhound had not proven its allegations of unsafe driving.
Greyhound then requested a hearing on the claim adjudicator's finding before a hearing referee, charging that plaintiff had been fired for "insubordination." The referee affirmed the claims adjudicator's decision and found that plaintiff had not driven "unsafely" and was not "insubordinate."
Greyhound then appealed to the Board. At the hearing conducted on June 4, 1991, plaintiff's supervisor testified that upon plaintiff's hiring, he received a driver's rule book and another book which contained information about proper driving procedures. The supervisor also testified that the events at issue did not represent the first episodes of plaintiff engaging in unsafe driving, and that during plaintiff's 11-month career with Greyhound he received approximately five warnings, some written, alleging 14 infractions of company rules.
The supervisor stated that plaintiff had been cited for infractions which included unavailability for work, not knowing directions, failure to pick up passengers and freight and two accidents. He believed all of the infractions were serious since Greyhound was "dealing with a $250,000 coach and 40 peoples' lives." However, Greyhound was unable to offer any documentary evidence as to the alleged written warnings or other evidence regarding the nature of the warnings to support its claims of prior misconduct by plaintiff. Nevertheless, the referee found that plaintiff "deliberately and wilfully violated known and reasonable rules and policies of the employer despite repeated warnings and instructions to the contrary," and concluded that plaintiff was discharged for misconduct of the character contemplated by section 602(A) and thus ineligible for benefits.
On appeal, the Board affirmed the decision of the hearing referee.
On September 12, 1991, plaintiff filed a complaint for administrative review. The trial court affirmed the Board, finding that: (1) plaintiff deliberately and wilfully exceeded posted speed limits on February 15, 1991; (2) plaintiff's conduct harmed Greyhound because plaintiff's primary obligation was to insure that passengers not be placed in a hazardous position; and (3) plaintiff received previous warnings with respect to other driving violations. The court also affirmed the Board's determination that plaintiff's failure to inform Greyhound of the two unauthorized stops constituted misconduct.
On appeal, plaintiff contends that the trial court's order was improper and that the Board's decision was against the manifest weight of the evidence since there was no showing that the acts in question amounted to misconduct as defined in section 602(A).
A discharge disqualifies an employee from receiving unemployment compensation if based on behavior that amounts to "misconduct" within the meaning of section 602(A) of the Act. (Jackson v. Board of Review (1985), 105 Ill.2d 501, 507, 86 Ill.Dec. 500, 475 N.E.2d 879; Pesce v. Board of Review (1987), 161 Ill.App.3d 879, 882, 113 Ill. Dec. 864, 515 N.E.2d 849.) To find statutory misconduct the employer must meet three requirements: (1) a showing of deliberate and willful conduct, which is (2) based on a reasonable rule of the employer which (3) harmed the employer or another employee. (Adams v. Ward (1990), 206 Ill.App.3d 719, 724, 151 Ill.Dec. 782, 565 N.E.2d 53.) The employer is excused from proving actual harm if it can show that the employee has repeated the conduct at issue despite a prior explicit warning.
Plaintiff was not a good employee; he had a pattern of carelessness and neglect that few employers would accept or tolerate for long. However, the record does not support a finding of misconduct since Greyhound failed to prove that plaintiff's alleged unsafe driving or unauthorized stops amounted to deliberate or wilful conduct, that it suffered actual harm or that plaintiff received explicit warnings about the conduct which served as the basis for his discharge. Although Greyhound may have a reasonable rule concerning driver's safety with regard to maintenance of the proper speed or unauthorized *989 stops en route, it did not produce objective evidence demonstrating that plaintiff drove unsafely by exceeding the speed limit under the relevant conditions (i.e., Greyhound's employees testified that they did not "clock" plaintiff exceeding the speed limit), or that plaintiff acted more than negligently by stopping without authorization due to physical necessity. Failure to follow correct procedures or disregarding the employer's requirements as to safety does not automatically place the terminated employee beyond the Act. Siler v. Department of Employment Security (1989), 192 Ill.App.3d 971, 975, 140 Ill.Dec. 109, 549 N.E.2d 760 (employee's disregard of known employment policy as to safety and sanitation did not amount to statutory misconduct to deny him unemployment benefits).
In drafting section 602(A), the legislature intended that persons discharged for "incapacity, inadvertence, negligence or inability to perform assigned tasks" should receive unemployment benefits. (Siler, 192 Ill. App.3d at 975, 140 Ill.Dec. 109, 549 N.E.2d 760.) Hence, plaintiff's failure to follow company rules may have justified his discharge but did not constitute misconduct sufficient to disqualify him from collecting unemployment benefits. See Pesce, 161 Ill.App.3d 879, 113 Ill.Dec. 864, 515 N.E.2d 849 (although employee properly discharged for numerous collisions with company vehicles, such incidents amounted to negligence and could not justify denial of unemployment compensation); London v. Department of Employment Security (1988), 177 Ill.App.3d 276, 126 Ill. Dec. 609, 532 N.E.2d 294; cf. Ray v. Department of Employment Security Board of Review (1993), 244 Ill.App.3d 233, 185 Ill.Dec. 62, 614 N.E.2d 196 (claimant who deliberately violated company policy by stealing, hiding and then absconding with employer's property from which conduct employer suffered harm properly denied unemployment benefits).
Greyhound also failed to prove that it suffered actual harm from plaintiff's conduct. The trial court allowed that the Board "could infer" that plaintiff's conduct harmed Greyhound because the unauthorized stops somehow placed the passengers at risk. However, the record lacks testimony or other substantiation to support this inference. A mere potential for injury is not enough to establish the third element for a finding of statutory misconduct. Adams, 206 Ill.App.3d at 725, 151 Ill.Dec. 782, 565 N.E.2d 53, citing Pesce, 161 Ill.App.3d at 883, 113 Ill.Dec. 864, 515 N.E.2d 849; cf. Meeks v. Department of Employment Security (1990), 208 Ill.App.3d 579, 153 Ill.Dec. 523, 567 N.E.2d 481 (statutory requirement of harm satisfied since fellow employee of claimant suffered actual injury at plaintiff's hands).) Because Greyhound failed to show the actual injury it suffered from plaintiff's alleged unsafe driving or unauthorized stops, the trial court's finding that the Board could infer harm was against the manifest weight of the evidence.
Greyhound claims that it was not required to make a showing of actual harm due to the trial court holding that the Board could infer that plaintiff's conduct was repeated since he had received prior warnings for "driving violations." However, the Act is clear that prior warnings must involve a "warning or other explicit instruction" that relates to "such violation." (Ill.Rev.Stat. 1987, ch. 48, par. 432.) The record reveals that plaintiff did not receive warnings specific to the conduct for which he was discharged; hence, Greyhound has failed to satisfy the alternative requirement for statutory misconduct. See Adams, 206 Ill.App.3d at 726, 151 Ill.Dec. 782, 565 N.E.2d 53; cf. Jackson, 105 Ill.2d 501, 86 Ill.Dec. 500, 475 N.E.2d 879 (evidence that employee discharged for drinking on the job despite explicit prior warnings that such conduct violated company rules supported denial of unemployment benefits); London, 177 Ill.App.3d at 280-81, 126 Ill.Dec. 609, 532 N.E.2d 294.
Greyhound states that even if it failed to prove misconduct with regard to plaintiff's alleged unsafe driving or unauthorized stops, his failure to report such stops was a deliberate act against a known company policy which provided another basis for his discharge and denial of unemployment benefits. However, there is no evidence that plaintiff previously failed to report unauthorized stops and received prior warnings that such conduct *990 was grounds for discharge. Moreover, the stated reasons for plaintiff's discharge concerned his alleged unsafe driving and not his failure to advise Greyhound of unauthorized stops. Thus, plaintiff's alleged failure to report unauthorized stops cannot constitute an alternative basis to deny him unemployment compensation.
On review, the findings of an administrative agency are prima facie correct and will not be disturbed unless contrary to the manifest weight of the evidence. (Jackson, 105 Ill.2d at 513, 86 Ill.Dec. 500, 475 N.E.2d 879, citing Ill.Rev.Stat.1981, ch. 110, par. 3-110.) Findings are against the manifest weight of the evidence when, from the record, an opposite conclusion is clearly evident. (Kelley v. Department of Labor (1987), 160 Ill.App.3d 958, 961-62, 112 Ill.Dec. 379, 513 N.E.2d 988.) Findings must be based on evidence introduced in the case, "and nothing can be treated as evidence which is not introduced as such." Gregory v. Bernardi (1984), 125 Ill.App.3d 376, 378, 80 Ill.Dec. 706, 465 N.E.2d 1052.
The record in the present controversy clearly supports the conclusion that plaintiff received no specific prior warnings concerning the conduct for which he was discharged, or that his alleged speeding or making unauthorized stops harmed Greyhound in any concrete manner. Although the record unquestionably supports the conclusion that Greyhound was justified, even wise, in discharging plaintiff for numerous incidents of improper conduct during his 11-month period of employment, every discharge does not disqualify the employee from receiving employment benefits. (Adams, 206 Ill.App.3d at 726, 151 Ill.Dec. 782, 565 N.E.2d 53; London, 177 Ill.App.3d at 280, 126 Ill.Dec. 609, 532 N.E.2d 294.) The opportunity of receiving unemployment compensation is a benefit of employment considered by the Federal and State governments, the employer and the employee as part of the compensation for which an employee works. Therefore, to disqualify an employee from receiving such compensation an employer must satisfy a higher burden than merely proving that an employee should have been rightly discharged. See Siler, 192 Ill.App.3d at 975, 140 Ill.Dec. 109, 549 N.E.2d 760; Crowley v. Department of Employment Security Board of Review (1989), 190 Ill.App.3d 900, 904, 137 Ill.Dec. 929, 546 N.E.2d 1042 (employee bus driver's failure to report to supervisors to discuss passenger complaints despite prior warnings justified discharge but not denial of unemployment compensation).
Reversed.
TULLY, P.J., and RIZZI, J., concur.