# Illinois Official Reports

## Supreme Court

---

### *Petrovic v. Department of Employment Security*, 2016 IL 118562

---

| | |
|---|---|
| Caption in Supreme Court: | ZLATA PETROVIC, Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Appellees. |
| Docket No. | 118562 |
| Filed | February 4, 2016 |
| Modified upon denial of rehearing | May 23, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Robert Lopez Cepero, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Timothy Huizenga and Miriam V. Hallbauer, both of Legal Assistance Foundation, of Chicago, for appellant. <br><br> Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Nadine J. Wichern, Assistant Attorney General, of Chicago, of counsel), for appellees. |
| Justices | JUSTICE BURKE delivered the judgment of the court, with opinion. <br> Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion. |

¶ 1    The plaintiff, Zlata Petrovic, applied for unemployment insurance benefits with the Department of Employment Security (Department) following the termination of her employment with American Airlines (American). American filed a protest alleging that plaintiff was ineligible for benefits because she was "discharged for misconduct connected with [her] work," pursuant to section 602(A) of the Unemployment Insurance Act (Act) (820 ILCS 405/602(A) (West 2012)). Following a hearing, a referee for the Department denied plaintiff's application. The referee's determination was affirmed by the Board of Review (Board). Plaintiff filed a complaint for administrative review in the circuit court. The circuit court of Cook County reversed the Board's decision, finding that the actions which led to plaintiff's discharge did not constitute "misconduct" under the strict statutory definition in section 602(A). Thus, according to the circuit court, plaintiff was entitled to unemployment benefits. On appeal, the appellate court reversed the circuit court. 2014 IL App (1st) 131813.

¶ 2    In this court, plaintiff contends that the Board's decision finding her ineligible for benefits is clearly erroneous. We agree. For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4    Plaintiff was employed by American from June 6, 1988, to January 24, 2012. On January 1, 2012, plaintiff was working as a tower planner at O'Hare International Airport. Plaintiff received a call from a friend at another airline. The friend asked plaintiff whether she could do something for a passenger who was scheduled to fly on American. Plaintiff requested that the catering department deliver a bottle of champagne to the passenger. She then asked a flight attendant whether it would be possible to upgrade the passenger. The passenger in question was upgraded from business class to first class.

¶ 5    On January 24, 2012, plaintiff was advised that her employment was terminated because she upgraded the passenger and requested the champagne without proper authorization. The termination letter in the record states that plaintiff's actions violated two express policies governing American employees. These policies, referred to as rule Nos. 16 and 34, are set forth in the letter as follows:

> "Rule #16: 'Misrepresentation of facts or falsification of records is prohibited.'
>
> Rule #34: 'Dishonesty of any kind in relations [*sic*] to the Company, such as theft or pilferage of Company property, the property of other employees or property of others entrusted to the Company, or misrepresentation in obtaining employee benefits or privileges will be grounds for dismissal and where the facts warrant, prosecution to the fullest extent of the law. Employees charged with a criminal offense on or off duty may be immediately withheld from service. Any action constituting a criminal offense, whether committed on or off duty, will be grounds for dismissal.' "

¶ 6    Plaintiff subsequently applied to the Department for unemployment benefits. American filed a protest alleging that plaintiff was discharged because she "left her work area without her manager's approval to secure an undocumented upgrade for a friend of a friend." According to American, plaintiff's conduct violated a "reasonable and known policy." The protest does not refer to rule Nos. 16 and 34. Instead, it alleges that "[o]nly authorized employees may issue an

upgrade[,] and employees are expected to remain in their work area during the course of their shift unless given permission by their manager to leave. The claimant was made aware of this policy through PC [personal computer] based training."

¶ 7 A claims adjudicator denied benefits to plaintiff on the ground that she was discharged for misconduct connected with her work. Plaintiff appealed, and a Department referee conducted a telephone hearing. Plaintiff's supervisor, Robert Cumley, testified that he had no personal knowledge of the incident leading to plaintiff's termination. He stated generally that "[p]olicies and procedures were not followed" and that "questions were asked of the wrong people" about moving the passenger. When the referee asked Cumley to describe plaintiff's involvement in upgrading the passenger, he replied, "making the request and most likely moving the passenger, uh, circumventing the policy and procedures of having management, uh, approval to do so." Cumley testified that the upgrade caused a loss of revenue to American in the amount of $7,100. He also testified that moving a passenger to a different seat could affect the balance and weight numbers for the aircraft.

¶ 8 Plaintiff testified that a friend from another airline asked whether she could do something for a passenger on an American flight. She told him that she "could probably help with a bottle of champagne or maybe ask for an upgrade." Plaintiff asked the catering department to send a bottle of champagne to the plane for the passenger. The catering employees "didn't say no, we don't do this anymore." Plaintiff testified that, in her previous job working with customers in American's international department, she and acquaintances from other airlines would do favors for each other, such as helping passengers with connections. Referring to the champagne, she testified that "we used to do these things in the past." After requesting the champagne, plaintiff boarded the aircraft and asked the flight attendant if it would be possible to upgrade the passenger. The flight attendant said, "[o]h, no problem." Plaintiff informed the gate agent that the upgrade "might happen" and left the area without learning whether the passenger was upgraded. Plaintiff testified that none of the employees with whom she spoke informed her that her requests could not be granted. She stated that she was not aware of any rule or policy requiring a manager to approve requests for special treatment for a passenger.

¶ 9 Following the telephone hearing, the referee affirmed the denial of unemployment benefits due to misconduct under section 602(A) of the Act. The referee made no finding that plaintiff violated an express rule or policy of the employer. Rather, the referee concluded that "there are some acts of misconduct that are so serious and so commonly accepted as wrong that employers need not have rules covering them," and "[i]n this case, the claimant's action in giving away the employer's champagne and a free upgrade to first class was unacceptable by any standard." Finally, the referee found that plaintiff's conduct harmed American because it resulted in a financial loss to the company.

¶ 10 Plaintiff appealed the referee's decision to the Board, which affirmed the determination of ineligibility for unemployment benefits. The Board incorporated the entirety of the referee's decision as part of its decision and made no additional findings of fact or conclusions of law. On administrative review, the circuit court reversed the Board's decision and found that plaintiff was eligible for benefits. The court held that American failed to provide proof that plaintiff violated an express rule or policy. In the absence of an express rule, plaintiff could not have known that her requests for special treatment for a passenger were forbidden. Thus, the

court concluded, plaintiff's actions did not amount to "misconduct" under the disqualifying provision in section 602(A).

¶ 11    The Department, the Board, and the Director of Employment Security (collectively, the State defendants) appealed. The appellate court reversed the circuit court's judgment and reinstated the Board's order denying benefits. 2014 IL App (1st) 131813. The appellate court held that plaintiff "sought an upgrade for a friend of a friend without management authorization or payment" and "caused a $7,100 upgrade to first class to be issued without management approval." *Id.* ¶¶ 30, 33. According to the court, plaintiff's actions violated an American policy that only authorized employees may issue upgrades. *Id.* ¶ 30. The court thus upheld the Board's finding that plaintiff was terminated for misconduct. *Id.* ¶ 33.

¶ 12    This court allowed plaintiff's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Jan. 1, 2015).

¶ 13                                              ANALYSIS
¶ 14                                    I. State Defendants' Standing
¶ 15    At the outset, plaintiff argues that the State defendants had no standing to appeal the circuit court's judgment reversing the Board's denial of benefits. The State defendants were the only appellants because American did not participate in the appeal. Relying on *Speck v. Zoning Board of Appeals*, 89 Ill. 2d 482 (1982), plaintiff argues that the State defendants function solely in an adjudicatory or quasi-judicial capacity, which limits their capacity to appeal adverse decisions.

¶ 16    In *Speck*, this court held that an administrative body whose statutory charge is to "function in an adjudicatory or quasijudicial capacity" lacks standing to appeal a circuit court's reversal of its own decision on administrative review. *Id.* at 485. We held that the ordinance empowering a municipal zoning board to decide applications and appeals did not specifically authorize it to "assume the role of advocate for the purpose of prosecuting an appeal." *Id.* The zoning board thus was prohibited from appealing the circuit court's decision. *Id.*

¶ 17    However, the rule in *Speck* does not foreclose every appeal by an administrative agency seeking review of an adverse court judgment. In *Braun v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 108 Ill. 2d 119, 128 (1985), this court clarified that an administrative agency with additional managerial functions beyond those of a tribunal is not subject to the "normal rule that an administrative agency has no standing to appeal a decision reversing its own decision." Because the retirement board in *Braun* had "extensive managerial responsibilities" to maintain and manage disbursements from a pension fund, we held the retirement board had standing to appeal the circuit court's judgment. *Id.*

¶ 18    Plaintiff argues that the Department functions in an adjudicatory or quasi-judicial capacity, similar to the zoning board in *Speck*. Plaintiff points out that the Act delineates the Department's adjudicatory responsibilities and that the Director is statutorily empowered to decide applications for benefits, designate claims adjudicators, and obtain an adequate number of impartial referees to hear and decide disputed claims. 820 ILCS 405/701, 802 (West 2012). Plaintiff further notes that the Board has the power to affirm, modify, or set aside any decision of a referee (820 ILCS 405/803 (West 2012)) and has the discretion to take additional evidence, remand the case to the referee or claims adjudicator, or make a final determination on appeal. *Id.*

- 4 -

¶ 19 These are not the Department's only functions, however. In addition to its adjudicatory duties, the Department is specifically entrusted with administering the Act, preserving the fund, and handling its assets in accordance with the Act. See 820 ILCS 405/1700, 2100(A) (West 2012). Thus, the State defendants have independent interests in maintaining a uniform body of law involving the Act and protecting the fund. See *Braun*, 108 Ill. 2d at 128; see also *Farris v. Department of Employment Security*, 2014 IL App (4th) 130391, ¶ 31 (holding that the Department had standing to appeal the circuit court's decision reversing its denial of unemployment insurance benefits because it had a duty to protect the fund from diminution in the form of disbursements to ineligible claimants). By contrast, the zoning board in *Speck* had no purpose under its governing ordinance other than to decide the cases before it. We therefore reject plaintiff's contention that the State defendants lack standing to appeal the circuit court's decision on administrative review.

¶ 20 II. Plaintiff's Eligibility for Unemployment Insurance Benefits

¶ 21 Our review of the Board's decision to deny unemployment insurance benefits based on an employee's discharge for misconduct involves a mixed question of law and fact. See *Abbott Industries, Inc. v. Department of Employment Security*, 2011 IL App (2d) 100610, ¶¶ 15-16; *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 327 (2009); *Oleszczuk v. Department of Employment Security*, 336 Ill. App. 3d 46, 50 (2002). A mixed question of law and fact requires a court to determine the legal effect of a given set of facts. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Mixed questions are reviewed under the "clearly erroneous" standard, which is less deferential to the administrative agency than the manifest weight of the evidence standard. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 392 (2001). An agency's decision is clearly erroneous if, based on the entire record, the reviewing court is " 'left with the definite and firm conviction that a mistake has been committed.' " *Id.* at 393 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶ 22 We review the final decision of the Board, rather than the decision of the referee or the circuit court. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 819 (2009); *Czajka v. Department of Employment Security*, 387 Ill. App. 3d 168, 172 (2008). In the case before us, the Board incorporated the referee's decision in its entirety as part of its decision and made no additional independent findings. Therefore, it is appropriate to review the findings of fact and conclusions of law made by the referee in determining whether the Board's decision is clearly erroneous. See *Oleszczuk*, 336 Ill. App. 3d at 50. Applying the clearly erroneous standard of review, this court must determine whether the evidence in the record supports the Board's determination that plaintiff was discharged for misconduct within the meaning of section 602(A) of the Act (820 ILCS 405/602(A) (West 2012)). Under the Administrative Review Law, which governs judicial review of the Board's decision, our review extends to all questions of law and fact presented by the entire record. 820 ILCS 405/1100 (West 2012); 735 ILCS 5/3-110 (West 2012). Thus, we will overturn the Board's denial of unemployment benefits only if we are left with the "definite and firm conviction," based on the entire record, that the Board's decision was a mistake. (Internal quotation marks omitted.) *AFM Messenger Service*, 198 Ill. 2d at 393.

¶ 23    The main purpose of the Act is to relieve the economic insecurity caused by involuntary unemployment. 820 ILCS 405/100 (West 2012); *AFM Messenger Service*, 198 Ill. 2d at 396. The Act recognizes that involuntary unemployment not only burdens unemployed individuals and their families but also threatens the health, safety, morals, and welfare of all Illinois citizens. 820 ILCS 405/100 (West 2012). In light of this purpose, the Act must be liberally construed in favor of awarding benefits to unemployed workers. *AFM Messenger Service*, 198 Ill. 2d at 398; *Universal Security Corp. v. Department of Employment Security*, 2015 IL App (1st) 133886, ¶ 9; *Lojek v. Department of Employment Security*, 2013 IL App (1st) 120679, ¶ 34.

¶ 24    Because the Act is aimed at alleviating the burdens of "involuntary" employment, certain unemployed individuals are specifically disqualified from obtaining benefits. 820 ILCS 405/600 to 614 (West 2012). For example, individuals who leave work voluntarily without good cause attributable to the employing unit (820 ILCS 405/601 (West 2012)), individuals who are discharged for misconduct connected with their work (820 ILCS 405/602 (West 2012)), and individuals who fail to apply for suitable work or who refuse suitable work when offered (820 ILCS 405/603 (West 2012)) are ineligible for unemployment benefits. These disqualification provisions are intended to "act like gate-keepers against persons who lack a sincere desire to work and who seek to create situations where they can rely on government financial support." Lisa Lawler Graditor, *Back to Basics: A Call to Re-evaluate the Unemployment Insurance Disqualification for Misconduct*, 37 J. Marshall L. Rev. 27, 37 (2003). In other words, the purpose of a disqualification provision is to exclude employees who voluntarily become unemployed or stay unemployed because they prefer to collect benefits instead of working. *Id.* at 36-38.

¶ 25    Section 602(A) of the Act provides that an individual is ineligible for unemployment benefits if she has been discharged for "misconduct" in connection with her work. 820 ILCS 405/602(A) (West 2012). The Act defines misconduct as:

> "the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." *Id*.

¶ 26    An employee's actions thus constitute misconduct under the Act only if the evidence in the record satisfies three requirements: (1) a deliberate and willful violation (2) of a reasonable rule or policy of the employer governing the individual's behavior in the performance of her work that (3) either (a) harmed the employer or a fellow employee or (b) was repeated despite a warning or explicit instruction from the employer. Unless all three requirements are established by competent evidence in the record, the Board's decision to deny unemployment benefits on this basis should be reversed as clearly erroneous. See *Woods v. Illinois Department of Employment Security*, 2012 IL App (1st) 101639, ¶ 19.

¶ 27    It is important to emphasize that the disqualification for misconduct is intended to exclude individuals who intentionally commit conduct which they know is likely to result in their termination. See Graditor, *supra*, at 41 (underlying a disqualification for misconduct "is the implicit assumption that workers who deliberately violate a known employer rule or who commit acts in the moderate to extreme range of the spectrum do so knowing that

unemployment will likely result"); *Adams v. Ward*, 206 Ill. App. 3d 719, 726-27 (1990). It is not intended to exclude all employees who have been fired from their jobs. If the General Assembly intended to disqualify all fired employees from receiving unemployment benefits, there would be no need to define "misconduct" in the Act. While an employer has the right to fire an at-will employee for any reason or no reason at all (*Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 500 (2009)), "the Act requires a different legal standard to be applied to the separate question of whether a terminated employee is eligible to receive unemployment benefits." *Abbott Industries, Inc. v. Department of Employment Security*, 2011 IL App (2d) 100610, ¶ 25. In order to show that an employee should be disqualified for misconduct, "an employer must satisfy a higher burden than merely proving that an employee should have been rightly discharged." *Zuaznabar v. Board of Review of the Department of Employment Security*, 257 Ill. App. 3d 354, 359 (1993); *Hoffmann v. Lyon Metal Products, Inc.*, 217 Ill. App. 3d 490, 497-98 (1991); *Adams*, 206 Ill. App. 3d at 726.

¶ 28    Defendants request that this court resolve a split of authority in the appellate court regarding which party has the burden of proving an employee's disqualification due to misconduct. But, in fact, there is no "split of authority" on this issue. The appellate court has consistently held that the burden of establishing an employee's disqualification rests upon the employer who alleges that the employee was discharged for misconduct. See *Eastham v. Housing Authority of Jefferson County*, 2014 IL App (5th) 130209, ¶ 12; *Abbott Industries, Inc.*, 2011 IL App (2d) 100610, ¶ 25; *Messer & Stilp, Ltd. v. Department of Employment Security*, 392 Ill. App. 3d 849, 862 (2009); *Czajka v. Department of Employment Security*, 387 Ill. App. 3d 168, 176 (2008); *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 557 (2006); *Wrobel v. Department of Employment Security*, 344 Ill. App. 3d 533, 537-38 (2003); *Zuaznabar*, 257 Ill. App. 3d at 359; *Hoffmann*, 217 Ill. App. 3d at 497-98; *Adams*, 206 Ill. App. 3d at 726.[1] Contrary to defendants' argument, no Illinois appellate court decision holds that it is the employee's burden to prove that she was not discharged for misconduct. While it is true that a claimant bears the burden of establishing her initial eligibility for unemployment insurance benefits (see 820 ILCS 405/500 (West 2012); *Wise v. Department of Employment Security*, 2015 IL App (5th) 130306, ¶ 18), this does not mean that an employee must prove the absence of a disqualifying event. An employer alleging misconduct due to a willful and deliberate violation of an employment rule has proof of its own rules, if they exist, as well as proof that the employee was notified of the rule. Placing the burden on the employer, rather than the employee, thus imposes the burden of proof on the entity who has access to the relevant evidence. See *Ex parte Rogers*, 68 So. 3d 773, 779-80 (Ala. 2010); *Hooper v. Talbot*,

---

[1]The appellate court's imposition of the burden on the employer is in accord with the vast majority of states to have decided the issue. See, *e.g.*, *Ex parte Rogers*, 68 So. 3d 773, 779, 781 (Ala. 2010) (and cases cited therein) (the employer, not the claimant, has the burden of proving that claimant is disqualified from receiving unemployment compensation benefits on the basis of misconduct); *Bean v. Montana Board of Labor Appeals*, 965 P.2d 256, 261 (Mont. 1998); *Hohenstein v. Nevada Employment Security Division*, 346 P.3d 365, 369 (Nev. 2015); *Caterpillar, Inc. v. Unemployment Compensation Board of Review*, 703 A.2d 452, 456 (Pa. 1997); *Parker v. St. Maries Plywood*, 614 P.2d 955, 958 (Idaho 1980) (and cases cited therein); see generally 76 Am. Jur. 2d *Unemployment Compensation* § 71 (2005) ("An employer who alleges that a benefits claimant is ineligible for unemployment compensation by reason of misconduct has the burden of proof on this issue by a preponderance of the evidence."); 81A C.J.S. *Social Security and Public Welfare* § 502 (2016).

343 Ill. 590, 593 (1931) (it is reasonable and just to impose the burden of proof on the individual who is in possession of such proof, rather than requiring the other party to prove a negative). Accordingly, we see no reason to change the well-established rule that an employer who asserts an employee's disqualification for benefits based on misconduct has the burden of proving such misconduct.

¶ 29                     A. Deliberate and Willful Violation of a Reasonable Rule or Policy

¶ 30    Section 602(A) expressly limits misconduct to a deliberate and willful violation of a reasonable rule or policy of the employer. 820 ILCS 405/602(A) (West 2012). "Willful conduct is a conscious act made in violation of company rules, when the employee knows it is against the rules." *Wrobel v. Department of Employment Security*, 344 Ill. App. 3d 533, 538 (2003) (citing *Lachenmyer v. Didrickson*, 263 Ill. App. 3d 382, 389 (1994) ("[w]ilful behavior stems from employee awareness of a company rule that is disregarded by the employee")). The "deliberate and willful" language "reflects the General Assembly's intent that only those who intentionally act contrary to their employers' rules should be disqualified on the basis of misconduct, while those who have been discharged because of their inadvertent or negligent acts, or their incapacity or inability to perform their assigned tasks, should receive benefits." *Abbott Industries, Inc.*, 2011 IL App (2d) 100610, ¶ 19.

¶ 31    In light of the purpose of the misconduct disqualification, the requirement that a rule violation be "deliberate and willful" necessarily requires evidence that the employee was aware that her conduct was prohibited. While a rule or policy need not be written or formalized (*Caterpillar, Inc. v. Department of Employment Security*, 313 Ill. App. 3d 645, 654 (2000)), it must have been clearly expressed to the employee in order to place the employee on notice that she could be fired for violating it. See *Hoffmann v. Lyon Metal Products, Inc.*, 217 Ill. App. 3d 490, 498-99 (1991); *Farmers State Bank of McNabb v. Department of Employment Security*, 216 Ill. App. 3d 633, 637-38 (1991); *Adams*, 206 Ill. App. 3d at 726.

¶ 32    In the instant case, we can find no evidence in the record of a reasonable rule or policy prohibiting an American employee from requesting champagne or an upgrade for a passenger. "[A] rule is not reasonable unless it provides guidelines that are or should be known by the employee." *Garner v. Department of Employment Security*, 269 Ill. App. 3d 370, 375 (1995). Although plaintiff's termination letter refers to American rule Nos. 16 and 34, which prohibit "misrepresentation" and "dishonesty," these rules were not referenced at the hearing or introduced into evidence. The employer's sole witness at the hearing, Cumley, testified only that "[p]olicies and procedures were not followed" without identifying any express or written policy regarding requesting upgrades for customers. Cumley also testified that plaintiff asked "the wrong people" and failed to seek management approval for the upgrade. We find that these vague and conclusory statements do not constitute competent evidence of a reasonable rule or policy prohibiting plaintiff's actions.

¶ 33    Even if American did have a policy requiring an employee to obtain approval from a manager before seeking an upgrade for a customer, it did not submit evidence that plaintiff was aware of such a policy. The State defendants argue to the contrary, citing statements in the employer's written protest that "[o]nly authorized employees may issue an upgrade[,] and ***

The claimant was made aware of this policy through PC based training."[2] There is no evidence in the record, however, that plaintiff actually "issue[d] an upgrade" in violation of the alleged policy.

¶ 34    Plaintiff testified that she merely made inquiries of other employees and did not upgrade the passenger herself. Although Cumley testified that plaintiff "most likely mov[ed] the passenger," he admitted that he had no personal knowledge of the events and relied on various statements in the file that plaintiff asked "the wrong people" about moving the passenger. Plaintiff cannot be disqualified from receiving benefits based on others' conduct. Section 602(A) requires evidence that the claimant violated a rule or policy "governing *the individual's* behavior in performance of his work." (Emphasis added.) 820 ILCS 405/602(A) (West 2012). Possible rule violations by other employees thus have no bearing on whether plaintiff's own actions constituted misconduct under section 602(A). Accordingly, because American failed to introduce any evidence that plaintiff was aware her conduct was forbidden, it failed to meet its burden to establish a deliberate and willful rule violation. See *Zuaznabar*, 257 Ill. App. 3d at 358-59; *Adams*, 206 Ill. App. 3d at 727-28.

¶ 35    In the absence of an express rule or policy prohibiting plaintiff's actions, we are left to consider the Board's determination that "there are some acts of misconduct that are so serious and so commonly accepted as wrong that employers need not have rules covering them." The Board's conclusion finds support in numerous appellate court decisions holding that, under certain circumstances, an employer need not prove the existence of a rule or policy by direct evidence. Instead, these cases hold, a court may infer a rule violation "by a commonsense realization that certain conduct intentionally and substantially disregards an employer's interests." *Greenlaw v. Department of Employment Security*, 299 Ill. App. 3d 446, 448 (1998). The commonsense rationale was initially applied in cases of criminal conduct. *Meeks v. Department of Employment Security*, 208 Ill. App. 3d 579, 585 (1990) (employer need not prove an express rule against physically assaulting a coworker); *Ray v. Department of Employment Security Board of Review*, 244 Ill. App. 3d 233, 236 (1993) (employer need not prove an express rule against stealing). The appellate court later expanded the commonsense exception to cases in which the employee's conduct was not criminal or universally regarded as grounds for immediate termination. See *Lachenmyer v. Didrickson*, 263 Ill. App. 3d 382, 388-89 (1994) (throwing folder toward supervisor); *Stovall v. Department of Employment Security*, 262 Ill. App. 3d 1098, 1102-03 (1994) (leaving meeting and calling supervisor a liar); *Greenlaw*, 299 Ill. App. 3d at 449 (telling supervisor to "kiss my grits"); *Caterpillar, Inc. v. Department of Employment Security*, 313 Ill. App. 3d 645, 654 (2000) (sexually harassing a coworker); *Czajka v. Department of Employment Security*, 387 Ill. App. 3d 168, 177 (2008) (actively challenging an employer program).

¶ 36    Plaintiff contends that the judicially created commonsense exception cannot be reconciled with the plain language in section 602(A), which clearly requires evidence of a deliberate violation of a reasonable rule or policy of the employer. We agree, with the exception that evidence of a rule need not be shown where the employee's conduct would otherwise be illegal

___

[2] We note that the referee's decision does not refer to the upgrade policy referenced in the employer's protest, nor does it find that plaintiff violated an express rule or policy of the employer. As we have stated, the Board affirmed the referee's decision without making any independent legal or factual findings.

or constitute a *prima facie* intentional tort. As we have explained, the purpose of a disqualification is to prevent abuse of the unemployment insurance system by those whose termination is essentially by choice. Therefore, an employee should not be disqualified unless she engages in conduct she knew was prohibited. Where an employee's behavior would constitute a crime, such as theft or assault; a civil rights violation, such as sexual harassment; or a *prima facie* intentional tort, it is fair to say that the employee knows her actions are likely to result in termination. We hold, therefore, that in the absence of evidence of an express rule violation, an employee is only disqualified for misconduct if her conduct was otherwise illegal or would constitute a *prima facie* intentional tort.

¶ 37 Since the case at bar does not involve any illegal or intentionally tortious conduct, evidence of a deliberate rule violation is required. The employer failed to offer evidence of a rule or policy prohibiting an employee from requesting champagne or an informal upgrade for a passenger. To the contrary, plaintiff testified that these types of special favors had been done for airline customers in the past. She testified that none of her coworkers informed her that they could not grant her requests. In fact, she was told that it would be "no problem." No evidence in the record contradicts plaintiff's testimony regarding the normal business practices of her place of employment. Nor was there any evidence introduced of informal or unwritten rules pertaining to requests for customer upgrades. In the absence of a rule prohibiting her conduct, plaintiff could not reasonably have predicted that she would be fired as a result. As we have held, where an employee's conduct falls short of being criminal, illegal, or intentionally tortious, the employer must present evidence of a deliberate rule violation. American failed to do so. Since American failed to meet its burden of proving that plaintiff was discharged for misconduct under section 602(A), we find that the Board's decision finding plaintiff ineligible for unemployment benefits is clearly erroneous.[3]

¶ 38                              B. Harm to the Employer or Employees

¶ 39 Plaintiff raises an additional argument that American failed to present evidence that her conduct either harmed her employer or other employees, or was repeated despite a warning, as required by section 602(A). In light of our holding that there is no evidence in the record of a deliberate and willful rule violation by plaintiff, we find it unnecessary to reach this issue.

¶ 40                                      CONCLUSION

¶ 41 For the foregoing reasons, we reverse the judgment of the appellate court. We affirm the order of the circuit court reversing the Board's decision and finding that plaintiff is eligible to receive unemployment benefits.

¶ 42      Appellate court judgment reversed.

¶ 43      Circuit court judgment affirmed.

---

[3]We note that section 602(A) has recently been amended. Pub. Act 99-488 (eff. Jan. 3, 2016) (amending 820 ILCS 405/602(A) (West 2014)). The amendment lists certain circumstances under which an employee is disqualified from receiving benefits, "notwithstanding" the definition of misconduct set forth in the statute. Because the instant case does not involve any of the enumerated circumstances, the language in the amendment is irrelevant to our analysis.