2025 IL App (2d) 240294
No. 2-24-0294
Opinion filed October 1, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| IBRAHIM DAKA, | ) | Appeal from the Circuit Court |
| | ) | of Kane County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 23-MR-261 |
| | ) | |
| THE DIRECTOR OF EMPLOYMENT | ) | |
| SECURITY; THE DEPARTMENT OF | ) | |
| EMPLOYMENT SECURITY BOARD OF | ) | |
| REVIEW; DOVENMUEHLE MORTGAGE, | ) | |
| INC.; and GDI SERVICES, INC., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (The Director of Employment Security and | ) | Honorable |
| The Department of Employment Security Board | ) | Kevin T. Busch, |
| of Review, Defendants-Appellees). | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE KENNEDY delivered the judgment of the court, with opinion.
Justices Jorgensen and Mullen concurred in the judgment and opinion.

**OPINION**

¶ 1     At issue in this appeal is whether plaintiff Ibrahim Daka's application to the Department

of Employment Security (Department) for waiver of recovery of unemployment benefits was

properly denied. See 820 ILCS 405/900(A) (West 2022) (providing for a waiver of recoupment

for benefits received without fault during the COVID-19 disaster period, effective June 25, 2021).

Daka lost employment at defendant GDI Services, Inc. (GDI) in March 2020, when GDI closed

due to the COVID-19 pandemic. Daka applied for unemployment benefits and was approved by the Department, despite disclosing his employment at Dovenmuehle Mortgage, Inc. (Dovenmuehle). However, on his subsequent bi-weekly certifications, he marked that he had not worked, and he continued to certify as such and received benefits until the Department determined in March 2021 that he was ineligible because he was not unemployed. For the following reasons, we affirm the denial of his waiver application.

¶ 2                                    I. BACKGROUND

¶ 3      Daka lost his job as a janitor at GDI in March 2020, when the business closed in response to the COVID-19 pandemic. Following the loss of his job with GDI, Daka applied for unemployment benefits on or after March 8, 2020. In his application for unemployment benefits, Daka disclosed that he was still employed full-time with Dovenmuehle, where he was a records clerk. The Department approved Daka's application and began paying him unemployment benefits.

¶ 4      On March 22, 2021, the Department mailed Daka its determination that he was ineligible for unemployment benefits. The determination stated that evidence showed that he had performed services in full-time work and was not unemployed; therefore, he was ineligible for benefits from April 5, 2020, through March 13, 2021. A separate determination, mailed September 30, 2021, found the same, but was limited to the period of April 5 to April 18, 2020.

¶ 5      On October 29, 2021, Daka appealed the September determination that he was ineligible for benefits during the period of April 5 to 18, 2020, and an Administrative Law Judge (ALJ) heard Daka's appeal of the Department's determination on April 21, 2022.[1] The ALJ affirmed the

---

[1]Daka did not appeal the first determination of ineligibility issued on March 22, 2021.

determination, finding that Daka was not an unemployed individual for the time period due to his full-time employment at Dovenmuehle. In reaching the decision to affirm, the ALJ stated that Daka's reason for not reporting his work or wages from Dovenmuehle for the weeks at issue was because he believed the certification applied only to a secondary employment.

¶ 6      After the ineligibility determination, but before Daka's appeal of that determination, the Department mailed him a Notice of Overpayment and Recoupment Decision, dated May 28, 2021. The notice listed all overpayments from the week ending on April 11, 2020, until the week ending on March 6, 2021. The State's overpayments totaled $17,394, the extended unemployment compensation benefits totaled $14,718, and the federal additional compensation benefits totaled $14,400, for a total overpayment of $46,512. A subsequent notice of overpayment and recoupment decision, mailed September 30, 2021, revised the total overpayment amount to $44,712.

¶ 7      The record contains printouts from Daka's bi-weekly certifications, beginning with the period ending on April 18, 2020. In response to the query "Did You Work" for each week from the week ending on April 11, 2020, through the week ending on March 6, 2021, Daka marked "No." Below the query "Did You Work," the form asked for "Wages During Week," which was left blank for every week during the same period.

¶ 8                          A. Application for Waiver of Recoupment

¶ 9      On August 24, 2022, the Department mailed Daka a notice of his right to request a waiver of recovery of benefits overpayment. On October 7, 2022, through counsel, Daka express-mailed the Department an Application for Waiver of Overpayment, pursuant to section 900(A) of the Unemployment Insurance Act (Act) (820 ILCS 405/900(A) (West 2022)), including the application, a supporting statement, and 18 exhibits.

¶ 10    The application marked two reasons for overpayment: (1) Daka had not reported some income for one or more weeks when he certified, explaining that "I did not know and [the Department] did not explain that holding another job would preclude unemployment insurance benefits," and (2) a reconsidered determination changed an earlier determination that had found him eligible for benefits. In the second part of the application, Daka answered that repayment of the overpayment "would cause extreme financial hardship and change my position for the worse."

¶ 11    Daka's supporting statement provided as follows. When Daka lost his job at GDI in March 2020, he was employed at Dovenmuehle full-time but still experienced financial hardship due to the loss of his position with GDI. He disclosed his employment with Dovenmuehle in his initial application for unemployment benefits, and his application was approved. Not until March 2021 did the Department or anyone else inform him that his continued employment with Dovenmuehle precluded his eligibility for unemployment benefits (Daka remained employed at Dovenmuehle until September 2021). Consequently, he did not believe his employment with Dovenmuehle was relevant to his receipt of unemployment benefits. He believed that, once his initial application for benefits was approved, he did not need to continue to report his income from Dovenmuehle.

¶ 12    Daka asserted that the claimed overpayments of $44,712 were received through no fault of his own because he had disclosed his employment with Dovenmuehle. Further, he stated that a "substantial time had passed before [the Department] determined that it had made a mistake," which resulted in a substantial overpayment that he could not afford to repay. Daka had been employed as a truck driver for Hartwig Transit, Inc., since June 2021, at which he netted approximately $52,876 per year or $4,406 per month. His wife was disabled due to an automobile accident, and she received SSI disability monthly income in the amounts of $997.90 for herself and $515 for their minor daughter. His wife also received long-term disability insurance from

Lincoln Financial in the amount of $664 per month. His and his wife's combined net income was $6,083 per month (after his taxes but before hers). Daka also described his monthly expenses as $4,670.20, and listed his family debts as $12,311.40. Daka's various figures were supported by the attached exhibits.

¶ 13 The Department denied Daka's application for waiver via four determinations, each dated November 28, 2022, that together covered the claimed overpayment-period of April 5, 2020, through March 6, 2021. The determinations found that Daka was ineligible for a waiver of recovery of overpayment because he was at fault for the overpayment. Daka appealed the determinations, disagreeing that he was at fault.

¶ 14 In January 2023, the Department notified Daka that he would receive a hearing before a referee with an opportunity to present evidence in appealing the determinations against him. His hearing was set for March 8, 2023, via telephone.

¶ 15 B. Appeal to the Referee

¶ 16 At the March 8, 2023, hearing, the referee clarified that whether Daka met the requirements of an unemployed individual was not at issue, as the decision on that issue was final. Daka accepted that he was ineligible for unemployment benefits, but he was asking for a waiver of overpayment because he had not understood that he was ineligible during the relevant time periods.

¶ 17 Regarding whether Daka was at fault for the overpayment, the referee first asked whether Daka made a representation that was not accurate to receive unemployment benefits. Daka, who was represented by counsel, responded that he had not. Daka further testified that he had not failed to disclose a significant fact to receive unemployment benefits, and he was unaware at the time he received payments that he was ineligible to receive them. Daka confirmed that at the time he lost his job at GDI as a janitor around March 2020, he was employed full-time at Dovenmuehle. His

supervisor at GDI told him that he was being laid off due to the COVID-19 pandemic. The supervisor also told him that he could apply for unemployment, although, in saying this, the supervisor did not evaluate Daka's individual circumstances.

¶ 18    Daka continued testifying that he applied online for unemployment benefits, and one of the questions asked him whether he had another job. In response, he "clicked the Y for yes," and he listed Dovenmuehle as the company he worked for. In response to whether he worked full or part-time, he marked "F" for full-time. After entering this information, nothing on the application or website indicated to him that he was ineligible for unemployment benefits. Following his application, the Department informed him that he would receive money every two weeks. It did not mention anything about his employment at Dovenmuehle.

¶ 19    Daka was aware that he had to certify his unemployment on a periodic basis. When his attorney attempted to question him about what he marked on his continuing certifications regarding employment, the referee stopped him because the issue of Daka's unemployed status was not appealable. Daka's attorney attempted to explain that his questions were aimed at whether Daka was at fault—specifically, why he continued to certify his employment in the manner that he had. The referee ultimately allowed the line of questioning to continue "for the weight that it's worth." Daka testified that his continuing certifications asked if he had worked, and he interpreted the question as asking whether he had found a job to replace the one that he had lost; he did not believe the question pertained to his employment with Dovenmuehle. Because he had not found a job to replace his work at GDI, he answered "no" on the certifications as to whether he had worked during the relevant time period. He testified that he did not believe he was making a false statement on his certifications by indicating that he had not worked.

¶ 20    Across several separate decisions, all mailed on March 9, 2023, the referee affirmed the determinations appealed. The referee found that Daka was at fault because he had worked during the relevant periods but his bi-weekly certifications to the Department failed to accurately disclose that he had worked.

¶ 21                    C. Appeal to the Board of Review

¶ 22    On April 6, 2023, Daka appealed the referee's denial of his waiver application to the Department's Board of Review (Board). In his supporting statement to the Board, Daka argued that his benefits were received without fault. He contended that his case fell within the purview of section 2835.40 of Title 56 of the Illinois Administrative Code (Code) (56 Ill. Adm. Code 2835.40 (2022)), which provides that "receipt of any sum paid to a claimant as benefits, due to agency error, is without fault. A good faith mistake of fact by the claimant in the filing of his claim for benefits which results in an overpayment does not constitute fault." He explained that when he lost his job at GDI in March 2020, his HR director informed him that he could apply for unemployment benefits, and he did as he was advised. He disclosed Dovenmuehle on his application for benefits, and in doing so, the Department should have found him ineligible but did not. He did not personally understand that his employment at Dovenmuehle made him ineligible because he was unfamiliar with unemployment law.

¶ 23    Regarding his bi-weekly certifications, he stated that he marked "no" for whether he worked because he believed the question pertained to whether he had found replacement employment for GDI. He contended that his belief was reasonable because he had already disclosed his Dovenmuehle employment on his initial application, which the Department approved. He answered the Department honestly again in March 2021 that he was employed at Dovenmuehle.

¶ 24    In sum, Daka argued that he received benefits due to agency error on his initial application, which gave him the mistaken belief that he was eligible for benefits, and that his failure to disclose Dovenmuehle on the bi-weekly certifications was a good-faith mistake. He asserted that no determination, including that by the referee, had ever found that he obtained benefits through fraud.

¶ 25    The Board affirmed the referee via several decisions issued on July 26, 2023.[2] In reaching its decision, the Board reviewed the record before it, which included Daka's written arguments and the transcript of the March 8, 2023, testimony before the referee. The Board found that the record before it adequately set forth the evidence and that no further evidentiary proceedings were necessary.

¶ 26    The Board explained its decision as follows. Claimants are required to certify for benefits on a bi-weekly basis by answering a series of questions. One question is whether they are employed; if they are, they are required to report their wages. Here, Daka certified that he was not working, and he testified that he answered as such because he believed the certification was asking whether he had found a job to replace the one he had lost. The Board found it "hard to believe that [Daka] thought that he was being asked if he had found employment to replace the part time job he lost." The Board continued:

> "The question is simply: Are you employed? The choices for the answer are, yes or no. The Board finds that despite establishing hardship, [Daka] *** provided false information to receive benefits since he was working full time and certified that he was not working.

---

[2]For simplicity's sake, we hereinafter refer to the Board's decisions in the singular because the only difference among the decisions was the relevant time period reviewed. For the same reasons, we will hereinafter refer to the decisions of the referee and determinations of the Department in the singular.

For that reason, he does not qualify for a waiver of the recoupment of overpayment as a result of his false statements when he certified."

¶ 27                    D. Appeal to the Circuit Court

¶ 28   On August 29, 2023, Daka filed a complaint for administrative review of the Board's decision in the circuit court. His appeal argued in part that (1) the Board and the referee failed to credit his testimony that he disclosed his continuing employment with Dovenmuehle on his unemployment benefits application, (2) the Board's and the referee's findings regarding Daka's belief that he did not need to continue to report his employment with Dovenmuehle were unreasonable, and (3) the Board and referee erred in finding that he provided false information to the Department.

¶ 29   On February 1, 2024, Daka moved to supplement the record before the circuit court. The motion identified several items that he contended should be included in the record, including the following: his application for waiver of recoupment; the referee's April 22, 2022, decision; the exhibits before the referee; and Daka's original unemployment application.

¶ 30   On March 25, 2024, the circuit court heard the motion to supplement and entered an order denying the motion. The court found that the record was sufficient to address the issues before it of waiver and recoupment.

¶ 31   In deciding Daka's motion, the court was required to review the Board's decision and consider the merits of the appeal. The court determined that the Board's decision was neither against the manifest weight of the evidence nor clearly erroneous, stating that Daka's state of mind was irrelevant. It therefore also affirmed the Board's decision, finding that Daka made false statements on his certifications, which rendered him ineligible for unemployment benefits.

¶ 32   This timely appeal followed.

¶ 33                                    II. ANALYSIS

¶ 34    At issue in this appeal is whether Daka's application for waiver of recoupment of overpayment was properly denied. Daka argues that (1) the Board's decision was clearly erroneous and (2) the trial court abused its discretion in denying his motion to supplement the record. The turning point for Daka's first argument is whether the Department established that the benefits he received were without fault on his part. If they were received without fault, then the decision denying his application for waiver of recoupment was improper. We address his arguments in turn.

¶ 35                    A. Denial of Application for Waiver of Recoupment

¶ 36    Daka argues that the Board's decision denying his application for waiver of recoupment of overpayment was clearly erroneous. At the outset of his argument, he stresses that the purpose of the Act is to relieve economic insecurity caused by involuntary unemployment (see 820 ILCS 405/100 (West 2022) (declaration of the Act's public policy)) and that our supreme court has stated that the Act is to be liberally construed to favor the award of benefits (*Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 23). He contends that means we should construe the statutory waiver of recoupment provision in favor of allowing recoupment.

¶ 37    Daka concedes that as a full-time employee at Dovenmuehle, he did not qualify as an "unemployed individual" under the Act and was therefore ineligible for benefits. He continues that, nevertheless, in response to the COVID-19 pandemic, the Illinois legislature chose to provide relief to ineligible individuals who received unemployment benefits through no fault of their own by providing a waiver of recoupment by the State.

¶ 38    Daka argues that the only issue on this appeal concerning the application of waiver is whether the benefits he received were without fault on his part. He asserts that he has met the other requirements of the statute—namely, that his application was timely filed, that his benefits were

received within the COVID-19 disaster period, and that recoupment would be against equity and good conscience.

¶ 39    Regarding fault, Daka first argues that neither the underlying determinations nor the referee's decision found that he committed fraud, was at fault, or engaged in any wrongdoing. Instead, they simply found that he was ineligible for benefits and had mistakenly certified he had not worked or received wages.

¶ 40    Next, he argues that, pursuant to section 2835.40 of the Code (56 Ill. Adm. Code 2835.40 (2022)), his benefits were received without fault. He contends that the Department approved him for benefits despite his disclosure of full-time employment at Dovenmuehle, which constituted agency error. As for his bi-weekly certifications, he contends those were a good faith mistake of fact due to his incorrect belief that his employment with Dovenmuehle was inconsequential to his eligibility for benefits. Daka continues that the only evidence of his state of mind was his consistent testimony that he did not believe the question on the certifications pertained to any work but instead pertained only to new work to replace his lost employment at GDI. He contends his belief was reasonable, given that the Department approved his benefits application despite his initial disclosure of employment with Dovenmuehle.

¶ 41    Daka continues that a mistake of law cannot amount to fraud. As such, he contends that the Board's finding that he "provided false information" is an incorrect conclusion as a matter of law because a mistake is not the same as fraud. Daka further asserts that his ineligibility for benefits alone cannot amount to fault. In short, he contends that neither his ineligibility for benefits nor his mistaken certifications precluded approval of his application for waiver.

¶ 42    Additionally, Daka argues that his situation is "akin to one for equitable estoppel." As he clarifies in his reply brief, he invokes the principles of equitable estoppel to support that he did not

knowingly provide false information to the Department. He contends that the Department made an affirmative act in approving his initial application, he relied on that improper approval, and he continued to rely on it for almost a year before the Department caught its mistake.

¶ 43    Finally, Daka argues that, even if we find he acted with fault, we should still reverse the Board's decision as to the first payment of benefits, as those benefits were paid prior to his first bi-weekly certification to the Department. For the following reasons, we reject Daka's arguments.

¶ 44    A final order of the circuit court entered in an action to review the decision of an administrative agency is reviewable by appeal as in other civil cases. 735 ILCS 5/3-112 (West 2024). On administrative review of the Board's decision regarding unemployment benefits, we review the final decision of the Board, not the decision of the circuit court or referee. *Cannici v. Department of Employment Security Board of Review*, 2021 IL App (1st) 181562, ¶ 27 (citing *Petrovic*, 2016 IL 118562, ¶ 22). Where the Board's decision incorporates the referee's decision in its entirety and makes no independent findings, we may also review the findings of fact and conclusions of law made by the referee. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22.

¶ 45    The Board's decision in this case presents a mixed question of fact and law: an examination of the legal effect of the given set of facts. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001). Stated differently, a mixed question of fact and law exists where the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfied the statutory standard. *Id.* The primary question in this case is whether the Board properly found that Daka was at fault for receiving an overpayment of unemployment benefits when he continuously certified to the Department that he was not working despite being employed full-time at Dovenmuehle. *Cf. Matlock v. Illinois Department of Employment Security*,

2019 IL App (1st) 180645, ¶ 19 (finding a mixed question of fact and law on review of whether an employee left work without good cause attributable to his employer).

¶ 46    On a mixed question of fact and law, we review whether an agency's decision was clearly erroneous. *Petrovic*, 2016 IL 118562, ¶ 21. A decision is clearly erroneous if, after review of the entire record, we are "left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395.

¶ 47    The provision at issue here is section 900(A) of the Act (820 ILCS 405/900(A) (West 2022)). Section 900(A) provides for recoupment of benefits[3] by the State when an individual has been found ineligible to have received those benefits. Recoupment by the State may proceed at any time after an individual knowingly made a false statement or knowingly failed to disclose a material fact or, for cases after December 31, 1983, within five years of when the individual has been found ineligible for any other reason. *Id.* There is no question that Daka was found ineligible within five years of the benefits received in this case.

¶ 48    In June 2021, the legislature amended section 900(A) of the Act (*id.*) to provide a permanent waiver of recoupment of benefits received during the COVID-19 disaster period. Pub. Act 102-26, § 15 (eff. June 25, 2021) (amending 820 ILCS 405/900(A)). Waiver of recoupment by the State is available under the following circumstances: (1) "the sum *** was received by the individual without fault on his or her part," (2) recoupment of the sum would be "against equity and good conscience," (3) the sum received was after March 8, 2020, but prior to the last day of the COVID-19 disaster period, and (4) waiver is requested within 45 days of the mailing date of

---

[3]"Benefits" under the Act "means the money payments payable to an individual as provided in this Act, with respect to his unemployment." 820 ILCS 405/202 (West 2022).

notice from the Department that the individual may request waiver. 820 ILCS 405/900(A) (West 2022). Daka seeks waiver under this amended provision, and the only element of waiver at issue on this appeal is the first: whether the benefits received by Daka were received without fault on his part.

¶ 49    The Code also addresses waiver of recoupment of benefit overpayments in section 2835.67 (56 Ill. Adm. Code 2835.67 (2022)). It provides that the Department will permanently waive recovery of any overpayment of non-federally funded regular and extended unemployment insurance benefits received on or after March 8, 2020, and prior to the last day of the COVID-19 disaster period, if the Department determines that "(1) The overpayment was without fault on the part of the recipient; and (2) Recovery would be contrary to equity and good conscience." 56 Ill. Adm. Code 2835.67(a)(1), (2) (2022).[4] Section 2835.67(b) of the Code also provides that, in addition to the examples in section 2835.67(b) providing guidance on whether overpayment was without fault, the provisions of sections 2835.35 (benefits received with fault) and 2835.40 (benefits received without fault) of the Code are applicable to the Department's determination whether the overpayment was with or without fault on the part of the recipient.

¶ 50    Here, the Board's decision to affirm the denial of Daka's application for waiver was not clearly erroneous. First, regarding the underlying decisions and findings of fault, Daka is incorrect that there was no underlying finding of fault. Although the March and September 2021 determinations found him ineligible for benefits based on him performing services in full-time employment without addressing fault, those determinations were simply about his eligibility for benefits, not about waiver of recoupment. Thus, there was no reason to address fault. After Daka

---

[4]Section 2835.70 requires the same two-part determination for federally funded programs.

applied for a waiver of recoupment, the Department issued its determination on November 28, 2022, which found that, "[s]*ince the overpayment was the fault of the claimant*, he is ineligible for waiver of recovery of the overpayment" (emphasis added). After his appeal of that determination, the referee found that "the claimant worked and failed to certify as such to [the Department]. The underlying Determination constitutes fault, specifically a Failure to Disclose." And, on his appeal from the referee's decision, the Board found him ineligible for waiver because he "provided false information to receive benefits since he was working full time and certified that he was not working. For that reason, he does not qualify for a waiver of recoupment." Thus, at all three agency levels, there was a finding that the overpayment to Daka was not without fault on his part.

¶ 51    Next, Daka relies on section 2835.40 of the Code (56 Ill. Adm. Code 2835.40 (2022)) to support his argument that he received an overpayment without fault. However, determinations on fault are not limited to section 2835.40 or 2835.35 of the Code, and section 2835.40 is not dispositive of the case before us. Section 2835.40 broadly describes scenarios that are *without* fault: first, when benefits are paid due to agency error, and second, when the claimant makes a good faith mistake of fact in the filing of a claim for benefits. Although, as counsel for the Department agreed at oral argument, the Department's approval of Daka's initial application for benefits was the result of agency error, the Department did not seek recoupment of an initial period of benefits. The salient facts here are Daka's false certifications of continuing eligibility to the Department, asserting that he had not worked or received wages for the weeks in which he received benefits from April 2020 until March 2021. See 56 Ill. Adm. Code 2720.115(a) (2019) ("After the claimant has filed his or her initial claim, the claimant must certify as to his or her continuing eligibility."). To the extent that section 2835.40 speaks to certifications for continuing eligibility, the Board did not believe that Daka made a good faith mistake. Instead, it found it "hard to believe

that [Daka] thought he was being asked if he had found employment to replace the part time job he lost" where the question on the certifications was simply whether he was employed, with the only answers being yes or no. This finding was reasonable. The question on the certifications was direct, simple, and clear: "Did you work?" Such a question is not reasonably open to interpretation to exclude existing employment. Following this question on the certification forms was a simple request for "Wages During Week," which likewise makes a clear request: a declaration of any wages that were earned through any employment during the week.

¶ 52    As opposed to the general description of benefits received without fault in section 2835.40, we find that one of the specific examples provided in section 2835.67(b) of the Code (56 Ill. Adm. Code 2835.67(b) (2022)) better illuminates the situation presented on appeal. The examples in section 2837.67(b) of the Code are intended to "give guidance as to whether the overpayment was without fault *** or whether the overpayment was not without fault on the part of the recipient." *Id.* Example 3 provides in relevant part as follows:

> "The claimant is a full-time teacher and also works part time at a gym. Although the claimant is paid the full teaching salary during the pandemic, the claimant is laid off by the gym ***. The claimant files a claim for benefits and names the gym as the last employer. *When a claimant certifies for benefits each week, all wages earned must be reported.* The claimant certifies for benefits each week but does not report the school wages because of the erroneous belief that the claim is being filed 'against' the gym. When the failure to report the school wages is discovered, an overpayment is established. *The overpayment is not without fault on the part of the claimant because, while certifying for benefits, the claimant made a material misrepresentation in answering the question about wages earned.*" (Emphases added.) 56 Ill. Adm. Code 2835.67(b)(3) (2022)).

Like the claimant in Example 3 erroneously believing that he or she did not need to report other wages, Daka testified to an erroneous belief that he did not need to report his employment, and hence also his wages, at Dovenmuehle. And, as with the claimant in Example 3, Daka provided false answers by certifying that he did not work and failing to list any wages from his employment. Daka does not dispute that his employment with Dovenmuehle rendered him ineligible for benefits; he concedes he was not an "unemployed individual" under the Act, which defines an individual as unemployed "in any week with respect to which no wages are payable to him and during which he performs no services." 820 ILCS 405/239 (West 2022). As such, the Department's overpayment to Daka was not without fault on his part because he made material misrepresentations about his employment status and wages on his required certifications for continued eligibility for benefits.

¶ 53    Daka attempts to distinguish Example 3 by noting that there was no agency error in the initial benefits application in Example 3. We find this argument unpersuasive. The focus of Example 3 is on the claimant's failure to properly certify employment for each week that benefits were received: that is, the claimant "made a material misrepresentation" when certifying for benefits each week because the claimant had an "erroneous belief" about what wages to report. Moreover, we reject Daka's position that his certifications of continuing eligibility were mere continuations of the agency's error in approving his initial application. Ongoing certifications are required by the Code (56 Ill. Adm. Code 2720.115 (2019)), and for good reason: employment status is fluid and may change week-to-week. Daka had an obligation to certify truthfully, and he failed to do so; his obligation is not discharged by the agency error in approving his initial benefits application.

¶ 54     Daka also argues that his mistake does not amount to fraud, but this argument incorrectly assumes that fault can be established only by fraud. The applicable standard is whether overpayments are received *without fault* of the recipient, and, although fraud can certainly constitute fault, fault encompasses more than fraud. See 56 Ill. Adm. Code 2835.10 (2008) (providing time limits to recoup benefits, with subsection (a) applying to benefits obtained by means of fraud, that is, knowingly making a false statement or knowingly failing to disclose a material fact, and subsection (b) applying to benefits obtained without fraud, that is, "[w]hen a claimant has been found ineligible *** for any reason other than reasons stated in subsection (a)"); 56 Ill. Adm. Code 2835.67(b)(3) (2022) (Example 3). Thus, the Board's finding that Daka was ineligible for waiver of recoupment because he failed to disclose his employment status on his certifications was a proper finding to establish that the overpayments were not received without fault, regardless of the fact that it did not explicitly find that he *knowingly* made false certifications to obtain benefits, *i.e.*, obtained benefits fraudulently. Significantly, Daka's certifications were both false and material to his continuing eligibility for benefits.

¶ 55     As to Daka's estoppel analogy, we find it unpersuasive. The Board rejected the idea that Daka relied on the Department's approval when he falsely certified his continuing eligibility for benefits, and we already determined that the Board's position was reasonable. See *supra* ¶ 53. Furthermore, the idea of estoppel in this case cuts against the very idea of recoupment, since recoupment logically can apply only where a claimant, having received benefits, is later found ineligible for those benefits. As such, every case for recoupment could be said to contain an affirmative act by the Department (approval and payment of benefits), upon which a claimant justifiably relies. See *Morgan Place of Chicago v. City of Chicago*, 2012 IL App (1st) 091240, ¶ 32 (equitable estoppel applies against a public body where (1) the public body acted

affirmatively, (2) the affirmative act induced substantial reliance, and (3) the aggrieved party substantially changed its position as a result of its justifiable reliance). Thus, an analogy to equitable estoppel is at odds with the statutory scheme permitting recoupment of ineligible benefits. Again, what matters in this case is simply that Daka provided false answers in his bi-weekly certifications that were material to his continuing eligibility.

¶ 56    Last, we reject Daka's argument that, even if the Board's decision was generally correct, he should not have to repay the first two weekly distributions of benefits because they were paid before he submitted his certifications for continuing eligibility for those weeks. As we have already established, his false certifications for the weeks ending on April 11 and April 18, 2020, supported that the overpayment was not received without fault. Certifications of continuing eligibility are due at the end of the bi-weekly periods, and eligibility may change on a weekly basis. To excuse the first two weeks would ignore the requirement to certify for continuing eligibility simply because an individual does not certify employment until the benefit period is complete. Consistent with Example 3 of section 2835.67(b)(3) of the Code, we hold that Daka's false certification on April 21, 2020, for the weeks ending in April 11 and 18, 2020, meant he was not without fault for the benefits he received on April 11 and 18, 2020.

¶ 57    For all these reasons, the Board's decision denying Daka's application for waiver of recoupment was not clearly erroneous.

¶ 58                    B. Motion to Supplement the Record

¶ 59    Daka also argues that the circuit court abused its discretion in denying his motion to supplement the record with materials that included his application for waiver of overpayment, two underlying determinations regarding his benefits, and the underlying ALJ decision finding him ineligible for benefits. See 735 ILCS 5/3-111(a)(2) (West 2022) (providing that the circuit court

has the power to make orders "*it deems proper* for the amendment, completion or filing of the record of proceedings" of the agency (emphasis added)). Daka argues that many of the materials are critical parts of the record to a proper review of the dispute on appeal, such as the referee's decision from April 22, 2022.

¶ 60     We have already determined that the Board did not err in affirming the denial of Daka's waiver for recoupment. Since we review the decision of the Board, not that of the referee or the circuit court (*Cannici*, 2021 IL App (1st) 181562, ¶ 27), the issue of whether the circuit court erred in denying the motion to supplement when it affirmed the Board is moot.

¶ 61     Nevertheless, we find no abuse of discretion in this case. See *Jennings v. White*, 363 Ill. App. 3d 637, 644 (2005) (applying the abuse-of-discretion standard to the circuit court's grant of a motion to supplement the record on administrative review). The record before the circuit court was adequate to decide the appeal, as the appeal turned on Daka's false statements on his bi-weekly certifications that he had not worked, and sufficient evidence of that was before the court. Of note, the Board reviewed the transcript of Daka's testimony from the hearing before the referee, where he not only conceded his false certifications to the Department but also testified to his state of mind in doing so.

¶ 62                                  III. CONCLUSION

¶ 63     For the reasons stated, we hold that the Board's decision was not clearly erroneous and therefore affirm the judgment of the Kane County circuit court, which affirmed the Board's decision.

¶ 64     Affirmed.

*Daka v. Director of Employment Security*, 2025 IL App (2d) 240294

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 23-MR-261; the Hon. Kevin T. Busch, Judge, presiding. |
| **Attorneys for Appellant:** | Philip J. Piscopo, of Storm & Piscopo, P.C., of Geneva, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and David E. Neumeister, Assistant Attorney General, of counsel), for appellees. |