# Illinois Official Reports

## Appellate Court

*Stein v. Department of Employment Security*, 2017 IL App (3d) 160335

| | |
|---|---|
| Appellate Court Caption | MITCHELL STEIN, Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY, an Administrative Agency of the State of Illinois; THE DIRECTOR OF EMPLOYMENT SECURITY; THE BOARD OF REVIEW, an Administrative Agency of the State of Illinois; and CATERPILLAR, INC., Employer, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-16-0335 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | July 18, 2017<br><br>August 31, 2017<br>August 31, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Fulton County, No. 14-MR-130; the Hon. Patricia A. Walton, Judge, presiding. |
| Judgment | Confirmed. |
| Counsel on Appeal | Jennifer Bonesteel, of Law Office of Chris Doscotch, LLC, of Peoria, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (Daniel J. Hartweg, Assistant Attorney General, of counsel), for appellees. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Carter and O'Brien concurred in the judgment and opinion.


**OPINION**

¶ 1     The plaintiff, Mitchell Stein, filed an application for unemployment benefits with the defendant, the Department of Employment Security (the Agency). The Agency denied the application, finding that Stein had not been "actively seeking work" during the applicable time period. The circuit court upheld the Agency's decision, and Stein appealed. On appeal, Stein argues that the Agency's Board of Review (the Board) erred when it denied his application for unemployment benefits. We confirm the Board's decision.

¶ 2                                        FACTS

¶ 3     Stein began working as a quality specialist for Caterpillar in February 2008. He injured his shoulder at work on April 11, 2013, and, as a result, his duties were reduced from working on the line to driving a fork truck. He was laid off because Caterpillar no longer had work for him. His last day of work was May 3, 2013. He applied for and began receiving unemployment benefits.

¶ 4     Stein had shoulder surgery on August 6, 2013, after which he was declared medically unable to work. Because of this disability, he was found ineligible to receive unemployment benefits, retroactive to May 5, 2013. Stein appealed that decision, claiming that he did not become medically unable to work until his August surgery.

¶ 5     A telephone hearing was scheduled for November 7, 2013, before an administrative law judge (ALJ). However, once everyone was connected, including Stein, the ALJ lost the connection and was unable to regain contact. The hearing did not take place. On November 13, 2013, the ALJ dismissed Stein's claim, ruling that he failed to appear for the hearing. Stein appealed that decision, and on February 20, 2014, the Board reinstated the claim and remanded the case for the ALJ to conduct a new hearing.

¶ 6     On March 4, 2014, the ALJ conducted another telephone hearing. It was clarified that the time period relevant to Stein's unemployment compensation claim was May 5 to August 6, 2013. Stein claimed that he had been looking for any kind of work during that time, in part because there were no jobs nearby that were similar to what he had done for Caterpillar. He described himself as a jack-of-all-trades and stated that he could drive equipment and trucks, could perform most jobs in a factory, and had worked as a machinist in Mossville. He expressed his willingness to work any day of the week, to drive up to 40 miles away, and to accept as little as $10 per hour in pay. He reported that he did not receive any job offers in response to his inquiries. However, he did not have the job search log in front of him for the hearing.

¶ 7     The ALJ issued a second decision on March 5, 2014, finding that Stein made only a perfunctory search for work during the applicable time period, as he had no job search record and could not recall any specific employer that he had contacted. Thus, the ALJ found that

Stein was not actively seeking work and that he was ineligible to receive benefits for the applicable time period.

¶ 8 Stein appealed that decision, claiming that he was under the impression that the only issue to be considered at the hearing was whether he was under a medical work restriction during the applicable time period. The Board found that Stein could in fact have been confused about the scope of the hearing, as the original determination only addressed his inability to work and availability to work. Thus, the Board remanded the case once again for another hearing at which evidence on Stein's job search was to be received and considered.

¶ 9 Another telephone hearing was conducted by the ALJ on June 11, 2014. Stein submitted his job search record for the hearing. That record indicated that Stein, who resided in Canton, performed two job inquiries per week between May 7 and August 5, 2013, for a total of 27 inquiries. Ten of these inquiries were made in person and 17 were made by phone. Of the 27 inquiries, 25 were to Canton businesses, and 2 were made to businesses in nearby Farmington. There were no follow-up inquiries made of any of these businesses. One inquiry resulted in no callback and one resulted in no answer, but the remaining 25 inquiries all resulted in Stein being told that the businesses were not hiring. Stein stated that the economy was bad at the time. He was willing to work any days, any hours, up to an hour away, and for at least $10 per hour. The inquiries were made of a broad range of businesses, and most of the inquiries were for any type of position. Several of the inquiries he made were for maintenance or driver positions.

¶ 10 Stein's claim was denied for a third time. This time, the ALJ found that Stein's job search constituted a "meager" effort such that it was not a search "reasonably calculated to return to the labor force." Stein appealed that decision. He attached an affidavit to his appeal in which he stated that when he was at the Agency's Peoria office in May 2013, an employee told him that searching for two or three jobs per week would be sufficient.

¶ 11 On September 18, 2014, the Board issued its decision affirming the ALJ's decision. First, the Board refused to afford any weight to the claim in Stein's affidavit:

"Regarding the claimant's contention that he received ill informed advice from a Department representative when he filed his claim for benefits, in Deford-Goff v. Department of Public Aid, 281 Ill. App. 3d 888, 667 N.E.2d 701 (4th Dist. 1996), the Court held that the affirmative acts of the State inducing detrimental reliance in another generally must be the acts of the State itself, such as legislation, rather than the unauthorized acts of a ministerial officer. As stated by the Court in Halleck v. County of Cook, 264 Ill. App. 3d 887, 637 N.E.2d 1110 (1st Dist. 1994), if a government entity were held bound through equitable estoppel by an unauthorized act of a governmental employee, than [*sic*] the government would remain helpless to remedy errors and forced to permit violations to remain in perpetuity. We therefore find this contention invalid in the instant case."

Second, the Board found that Stein's "contacts with potential employers were meager, and evidence only a perfunctory effort to find work." Thus, the Board ruled that Stein had not been actively seeking work during the applicable time period.

¶ 12 Stein appealed the Board's decision to the circuit court. On May 5, 2016, the court issued its written decision affirming the Board's ruling. Stein appealed.

ANALYSIS

Stein's first argument on appeal is that the procedural missteps that occurred in this case mandate a reversal of the Board's decision. He admits that the proper evidence was eventually considered, but claims that the outcome was "preordained" and that the "entire process" was clearly erroneous. Stein provides no authority to support the existence or viability of this claim.

Illinois Supreme Court Rule 341(h)(7) (eff. Jan. 1, 2016) requires appellants to provide citations to authority for their arguments. *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010) (holding that "[a]n issue that is merely listed or included in a vague allegation of error is not 'argued' and will not satisfy the requirements of the rule"). The failure to include supporting authority results in the forfeiture of the argument. *Id.* Because Stein has provided no authority in support of his first claim, it has been forfeited for appellate review and we do not consider its merits.

Stein's second argument on appeal is that the Board's decision was clearly erroneous and against the manifest weight of the evidence. Specifically, Stein contends that he was in fact "actively seeking work" as required by the Unemployment Insurance Act.

When an appeal of an administrative agency's final decision comes to this court, we review the decision of the agency—here, the Board's decision—rather than that of the circuit court. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22. "The findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct." 735 ILCS 5/3-110 (West 2014). Because our review of the Board's decision requires us to determine the legal effect of a particular fact scenario, this appeal involves a mixed question of law and fact. See *Petrovic*, 2016 IL 118562, ¶ 21. We review a mixed question of law and fact under the clearly erroneous standard. *Id.* "An agency's decision is clearly erroneous if, based on the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been committed. [Citation.]" (Internal quotation marks omitted.) *Id.*

In part, section 500(C) of the Unemployment Insurance Act provides that an unemployed individual is eligible to receive benefits if "[h]e is able to work, and is available for work; provided that during the period in question he was actively seeking work and he has certified such." 820 ILCS 405/500(C) (West 2014). The Unemployment Insurance Act does not define "actively seeking work," but the Department has defined it in section 2865.115 of Title 56 of the Illinois Administrative Code:

> "a) An individual is actively seeking work when he makes an effort that is reasonably calculated to return him to the labor force. Reasonableness is determined by factors including, but not limited to: the individual's physical and mental abilities, his training and experience, the employment opportunities in the area, the length of unemployment, and the nature and number of work search efforts in light of the customary means of obtaining work in the occupation." 56 Ill. Adm. Code 2865.115(a) (1993).

Section 2865.115 also contains guidelines and examples regarding whether one is "actively seeking work." One relevant guideline is found in section 2865.115(d), which states in part that "[w]hether an individual is actively seeking work is determined in part by comparing his occupation with labor market conditions in the locality." 56 Ill. Adm. Code 2865.115(d) (1993). Also, section 2865.115(e) states that "[a]s the period of unemployment lengthens, the individual should intensify his efforts to find work in his usual occupation, or, he

should pursue work in another occupation for which he is qualified." 56 Ill. Adm. Code 2865.115(e) (1993). Further, section 2865.115(f) provides:

"Whether or not the individual is actively seeking work is determined by the quality of his efforts; although the quantity of job contacts should be considered, it is not necessarily determinative of an active search for work. The methods that the individual uses to contact employers should be examined in light of those customarily used to obtain work in the occupation." 56 Ill. Adm. Code 2865.115(f) (1993).

¶ 20 Our review of the record in this case reveals no error in the Board's decision to deny Stein unemployment benefits during the applicable time period. The job search record provided by Stein indicated that he made two inquiries per week between May 7 and August 5, 2013, and did not "intensify his efforts" as that time period lengthened. See 56 Ill. Adm. Code 2865.115(e) (1993). That failure may have been justified by changes in his physical condition, but we see no evidence that the ALJ was provided with any such information. However, the quantity of job inquiries is not necessarily the sole, or even the major determinant of the diligence of Stein's job search (56 Ill. Adm. Code 2865.115(f) (1993)). Therefore, we also consider the quality of Stein's inquiries.

¶ 21 Despite Stein's testimony at the hearing that he would have been willing to work as far as an hour and/or 40 miles away from Canton, 25 of his 27 job inquiries were made of businesses in his hometown of Canton; the remaining two were made in nearby Farmington. Further, while his inquiries were made of a broad range of business types, Stein had been coming off a job in which his duties were limited due to his shoulder injury, and he provided no evidence at the hearing that he would be physically capable of performing the positions for which he was inquiring (see 56 Ill. Adm. Code 2865.115(b) (1993) (stating that "[a]n individual is not actively seeking work if he seeks work that is unrealistic in light of his physical or mental limitations")) or whether he was even qualified for any available positions with those employers (see 56 Ill. Adm. Code 2856.115(c) (1993) (stating that "[t]he individual is not actively seeking work if he seeks work that is unrealistic in light of his training or experience")). As Stein described himself as a jack-of-all-trades and because there was no evidence to suggest that his former position with Caterpillar required any specialized skill or certification,[1] we see no reason why Stein could not have expanded the geographic reach of his job search, at least to his self-professed limits, or why he could not have performed more than two job inquiries per week—even in light of his testimony that the economy was "bad" at the time. See 56 Ill. Adm. Code 2865.115(d) (1993) (stating that "[w]hether an individual is actively seeking work is determined in part by comparing his occupation with labor market conditions in the locality").

¶ 22 Regarding his claim about the Department employee who allegedly told him that two or three job inquiries per week would be sufficient, Stein alleges that "the Supreme Court found an argument along these lines to be persuasive with regard to the statements of unemployment personnel in [*Ferretti v. Department of Labor*, 115 Ill. 2d 347 (1987)]." However, Stein provides no pinpoint citation for his claim, and a review of the *Ferretti* decision does not confirm that any such statements were made to Ferretti by unemployment personnel. In fact, our supreme court quoted the appellate court's statement that "[the claimant] stated that during

___

[1]Again, Stein stated at one of the hearings that there were no jobs nearby that were similar to what he did for Caterpillar.

his routine visits to the unemployment office, no one questioned the adequacy of his job search list or suggested any guidelines as to the nature or quantity of job contacts necessary to fulfill the requirements of the [Unemployment Insurance Act]." *Id.* at 354. Thus, *Ferretti* does not provide any support for Stein's claim in this regard. Moreover, Stein makes no attempt to attack the Board's rationale for rejecting this claim—specifically, the two cases the Board cited that discuss equitable estoppel in relation to unauthorized acts of ministerial officers (*Deford-Goff v. Department of Public Aid*, 281 Ill. App. 3d 888 (1996); *Halleck v. County of Cook*, 264 Ill. App. 3d 887 (1994)). For these reasons, we likewise reject Stein's claim.

¶ 23      "The receipt of unemployment compensation is not without limitation but is a conditional right and the burden of proof of eligibility rests upon the claimant." *Brown v. Board of Review*, 8 Ill. App. 3d 19, 23 (1972). Unemployment benefits cannot be obtained merely by presenting the Department with a job search log that contains few details. The applicant must also demonstrate, *inter alia*, that he or she was "actively seeking work" as defined by section 2865.115 of the Illinois Administrative Code. To the extent that Stein attacks the Board's decision for the failure to cite certain factors listed in section 2865.115, we find that "deficiency" to be more a measure of Stein's failure to present pertinent evidence at the hearing than the Board's failure to consider those factors. Under these circumstances, we hold that the Board did not err when it found that Stein was not "actively seeking work" during the applicable time period such that he was not eligible to receive unemployment benefits for that period.

¶ 24                                    CONCLUSION

¶ 25      The decision of the Department of Employment Security's Board of Review is confirmed.

¶ 26      Confirmed.